**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CATHERINE L. COEN, | ) | |
| | ) | |
| Plaintiff, | ) | **09 C 2049** |
| | ) | |
| v. | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| SALLY D. COFFELT, THE OFFICE | ) | |
| OF CLERK OF THE CIRCUIT | ) | |
| COURT OF LAKE COUNTY | ) | |
| and THE COUNTY OF LAKE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Catherine Coen brought suit under 42 U.S.C. § 1983 against the Clerk of the Circuit Court of Lake County, Sally Coffelt, after plaintiff was terminated. She alleges that Coffelt retaliated against her for supporting Coffelt's political opponent in the November 2008 election and the formation of a labor union. Before the Court is defendant's motion for summary judgment. For the reasons set forth below, the Court grants in part and denies in part the motion.

## Facts

1.      *Plaintiff's Employment with the Lake County Circuit Clerk*

Defendant Sally Coffelt has been the elected Clerk of the Circuit Court of Lake County, Illinois ("Clerk's office") from 1980 to the present. (Def.'s LR 56.1(a)(3) Stmt. ¶ 4.) Plaintiff Catherine Coen was an employee of the Clerk's office from April 25, 1990 to November 7, 2008. (*Id.* ¶ 3.) Coen began as a clerk and was ultimately promoted to principal clerk in July 1994. (*Id.* ¶¶ 11-12.) As a principal clerk, her responsibilities included working at the customer

counter taking in money, filing pleadings and new cases, handling the mail, answering telephones and training other clerks (on a limited basis). (*Id.* ¶¶ 11, 13.) Plaintiff also acted as a temporary supervisor for two years, but did not have the title of supervisor or any supervisory authority. (*Id.*)

During the course of her employment, plaintiff received annual employment reviews that were completed by her supervisor and reviewed and signed by Coffelt. (*Id.* ¶¶ 14-15, 18, 20, 23.) Coen's employment review for 2006 contained the following comments: "Improve attitude when asked to help with other departments[,]" "do not display negative attitude." (*Id.* ¶¶ 14-15.) Also on the 2006 review, Coen received a "2" out of a possible "5" in the category "Assist at various times with the general counter. Waits on public as well as answers phones. Internal and external communications." A "2" means "needs improvement." (*Id.* ¶ 17.) This category has the least weight in her overall employment review. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 4.) In all other categories on her employment review plaintiff received a "4" out of "5." (*Id.*)

Coen's 2007 employment review had the following comments: "make sure you only worry about your job and not be concerned about others" and "[k]eep opinions to yourself." (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 16, 19.) Coen's employment review for 2008, which was signed by Coffelt on October 15, 2008, stated: "You [Coen] have had a tendency not to work as a team player and make comments that have a negative impact within the office" and "[n]eed[] to improve verbal skills in and attempt to have a more positive attitude or keep comments to yourself." (*Id.* ¶ 21.) Also on the 2008 review, Coen received a "1" out of "5" in the category "Willing to assist. Internal and external communications." (*Id.* ¶ 22.) A score of "1" means "unsatisfactory." (*Id.*) However, plaintiff's 2008 employment review indicated that she was "meet[ing] expectations." (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2.) Further, during the course of her

twenty years of employment with the Clerk's office, plaintiff never received an employment review that was "unsatisfactory" and was always either "meet[ing]" or "exceed[ing]" expectations. (*Id.*)

2. *The Formation of a Union*

In the spring of 2008, Coffelt was aware that Coen and other employees supported the formation of a labor union within the Clerk's office. (*Id.* ¶ 15.) On October 8, 2008, plaintiff spoke in favor of the union at a public meeting. (*Id.* ¶ 14.) All of the individuals who supported the formation of the union are still employed with the Clerk's office, with the exception of Pat Schueneman, who has since retired. (Def.'s LR 56.1(a)(3) Stmt. ¶ 53.)

3. *The 2008 Election*

The Clerk's office may choose to adopt some or all of the policies set forth in the Lake County Employee Policies and Procedures Manual ("Employee Manual"). (*Id.* ¶ 7.) Although there was a policy in the Employee Manual restricting political activities at work, there was no written policy at Coffelt's office, and no indication that she adopted the policy in the Employee Manual. (*Id.* ¶ 9; Def.'s Ex. B, Coffelt Dep. 118:8-119:5, Mar. 23, 2010.) Instead, every four years before the primary election, Coffelt verbally told her employees that politicking was not to be done in the office. (Def.'s LR 56.1(a)(3) Stmt. ¶ 8.) However, Coen states, and Coffelt denies, that Coffelt herself engaged in politicking in the office by distributing nominating petition signature sheets to Coen and a co-worker. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 37.) It is undisputed that Coen and a co-worker signed Coffelt's nominating petition at work. (*Id.*)

In the spring of 2008, Coffelt became aware that Coen supported Coffelt's opponent, Cynthia Haran. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 37-39.) On October 15, 2008 and every day thereafter, defendant drove by plaintiff's house and saw a campaign sign for Cynthia Haran in

plaintiff's yard. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 17.) Coffelt was also aware that several other employees of the Clerk's office supported Haran in the 2008 election, including Margie Kobus, Jane Lukasic, Eileen Farrell and Richard Worth. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 38-39.) All of these employees, except Coen, are still employed by the Clerk's office. (*Id.* ¶ 40.) Defendant Coffelt admits that she felt disappointment and probably some anger and disbelief that her employees were supporting her political opponent. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 18.)

Coffelt testified that, before plaintiff was terminated, employees of the Clerk's office informed her that plaintiff was always saying negative things about her. (Def.'s LR 56.1(a)(3) Stmt. ¶ 28.) Jody Fields Lobrillo, an employee that worked near plaintiff and who supported Coffelt's reelection, told Coffelt that plaintiff talked about Coffelt in a negative way and that plaintiff was upsetting the office. (*Id.* ¶ 26; *see* Coffelt's Dep. 112 (stating that Lobrillo provided volunteer work for Coffelt's campaign).) She also told Coffelt that plaintiff made political statements against Coffelt to customers of the Clerk's office. (Def.'s LR 56.1(a)(3) Stmt. ¶ 46.) For instance, plaintiff Coen said "Go, Cindy" to two private attorneys while at the counter of the Clerk's office, indicating her support for Cynthia Haran. (*Id.* ¶ 47.) Coffelt testified that two or three attorneys whose names she could not remember told her that plaintiff had made comments to them at the Clerk's office regarding her support for Cynthia Haran. (*Id.* ¶ 48.) Plaintiff admits to having been more outspoken than others in the office in her support for Cynthia Haran and the formation of the union. (*Id.* ¶ 49.) Coffelt never documented or caused anyone else to document any of plaintiff's negative statements about Coffelt. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 34.)

Additionally, during the summer of 2008, a Federal Express ("FedEx") employee told Kari McHugh, who is Coffelt's niece and an employee of the Clerk's office, that plaintiff said,

"Honorable, my ass" when she gave plaintiff a package for the Clerk's office. (Def.'s LR 56.1(a)(3) Stmt. ¶ 67.) McHugh told defendant about the comment before she terminated plaintiff. (*Id.*) Defendant did not take any action or put anything in plaintiff's personnel file regarding this incident. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 31.) Overall, defendant testified that plaintiff's attitude deteriorated to the point that she would not look defendant in the eye, would not talk to defendant and, generally, defendant thought that plaintiff's behavior made other employees in the office uncomfortable. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 26-27.) Coffelt admits, however, that she did not know that plaintiff made others in the office uncomfortable until after plaintiff was terminated. (Def.'s Ex. B, Coffelt Dep. 135.)

The only other employee that defendant knew had engaged in political conversations with customers of the Clerk's office was Margie Kobus. (Def.'s LR 56.1(a)(3) ¶ 41.) Defendant was aware of one instance in which Kobus, while working at the customer counter, told a former Lake County Public Guardian that she was supporting Cynthia Haran. (*Id.* ¶ 42.) The Chief Circuit Court Judge for Lake County, Judge Booras, a personal friend of Kobus', urged Coffelt not to terminate Kobus because, according to Coffelt, "[Judge Booras] knew Margie was working against me and he knew I was upset with her for it." (Pl.'s LR 56.1(a)(3) Stmt. ¶ 20; Def.'s Ex. B, Coffelt Dep. 96:5-7.) After the election in November 2008, defendant placed Kobus on a verbal probationary period for the single instance of politicking at work in violation of the Lake County policy restricting political activities at work. (Def.'s LR 56.1(a)(3) Stmt. ¶ 43.) Additionally, defendant asked Kobus for an apology for campaigning on Haran's behalf. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 23; Def.'s Ex. B, Coffelt Dep. 98-99.)

4.     *The FedEx Incident*

Part of Coen's responsibilities was handling the mail, including FedEx packages, which were placed on a public counter for the FedEx person to pick up.  (Def.'s LR 56.1(a)(3) Stmt. ¶ 30.)  In April 2008, Timothy E. Deadrick, who is Coffelt's brother, campaign treasurer, and an employee of the Clerk's office, put a package containing a $300,000.00 check on the counter for overnight FedEx delivery to an attorney in Chicago.  (*Id.* ¶ 29; Coffelt Dep. 111-12 (stating that Deadrick had been treasurer of Coffelt's campaign for five years); Def.'s Ex. O, Freidrich Decl. ¶ 8 May 17, 2010.)  A day or two later, the attorney to whom the check had been sent called to inquire about the check, at which time it was discovered that the package had not been picked up.  (Def.'s LR 56.1(a)(3) Stmt. ¶ 6.)  The package could not be located, and a new check had to be prepared and sent to the attorney.  (*Id.* ¶ 33.)  Plaintiff ultimately found the original package containing the check, but not until after the replacement had already been sent.  (*Id.* ¶ 34.)  Deadrick told defendant about the incident.  (*Id.* ¶ 35.)  Because of the circumstances surrounding the disappearance and plaintiff's disliking of Deadrick, Coffelt suspected that plaintiff had "manipulated" the disappearance of the original package, but Coffelt did not conduct an investigation, discuss this suspicion with plaintiff or note it on her performance evaluations.  (*Id.* ¶ 35; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 30.)

5.     *Coen's Termination*

Generally, defendant takes the following steps before terminating an employee:  (1) she talks with the employee to try and improve the situation; (2) she gives the employee a warning; and then (3) she puts the employee on a three-month probation after issuing a write-up, which she gives to the employee and her supervisor.  (*Id.* ¶ 35.)  In certain severe cases, the probationary period may be extended or the employee may be suspended.  (*Id.*)

On November 4, 2008, Coffelt was re-elected. (*Id.* ¶ 19.) On November 7, 2008, Coen was called into Coffelt's office. (Def.'s LR 56.1(a)(3) Stmt. ¶ 58.) In the meeting, Coffelt handed Coen a termination letter, which began with the sentence, "The past few weeks have been difficult ones for many here in the office," which defendant admits refers to the election season. (*Id.* ¶ 60.) The letter also states, "Your actions and attitude have resulted in my losing faith that I can rely on you to objectively perform your duties." (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 36; Pl.'s Ex. 6.) After Coen was terminated, McHugh, Coffelt's niece, completed a Lake County Termination Form at Coffelt's direction. (Def.'s LR 56.1(a)(3) Stmt. ¶ 63.) The reason listed for Coen's termination was "attitude." (*Id.*) Coffelt testified that she terminated Coen because of Coen's negative attitude and Coffelt no longer trusted Coen to do her job. (*Id.* ¶ 55.)

## Discussion

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant meets this burden, the non-movant cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). To succeed on a summary judgment motion, the evidence must be such "that [no] reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering the motion, the court must view all evidence in the light most favorable to the non-movant. *Id.* at 255.

Section 1983 makes it unlawful for any person "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . [to] subject[ ], or cause[ ] to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "The First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern under certain circumstances." *Sigsworth v. City of Aurora*, 487 F.3d 506, 508 (7th Cir. 2007).

Plaintiff argues that Coffelt violated her First Amendment rights when Coffelt terminated her because of her support for Coffelt's political opponent, Cynthia Haran, and because of her union formation activities. To establish a *prima facie* case of political retaliation in violation of the First Amendment, plaintiff must demonstrate two things: (1) that her conduct was constitutionally protected and (2) that the protected conduct was a substantial or motivating factor in defendant's decision to terminate her. *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998); *see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The Seventh Circuit has repeatedly held that this burden is not insignificant: "A disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election." *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981). If the plaintiff can establish a *prima facie* case, the burden shifts to the defendant to show that she would have taken the same action in the absence of political considerations. *Nelms*, 153 F.3d at 818. If the defendant carries this burden, the plaintiff must show that defendant's proffered reasons were pretextual. *Healy v. City of Chi.*, 450 F.3d 732, 739 (7th Cir. 2006).

Coffelt's first salvo is that she terminated Coen based on a viewpoint neutral policy. The Lake County Employee Policy provides: "No County employee shall engage in any partisan

political activities during working hours . . . . Any violation of this rule is cause for suspension or dismissal." (Def.'s LR 56.1 Stmt. ¶¶ 8-9.) "Viewpoint neutral policies, administered without discrimination, . . . . limiting the political activity of [government] employees, applicable only to such employees while on duty or on the governmental employer's property, will almost always satisfy [constitutional muster]." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 379 (5th Cir. 2008). As an initial matter, because county personnel rules do not apply to non-judicial officers of the Circuit Courts because they are employees of the state, *see Warren v. Stone*, 958 F.2d 1419, 1424 (7th Cir. 1992), the Lake County Employee Policy would only apply to Coen if Coffelt adopted it as the Circuit Court's policy. It is not clear that she did. (*See* Def.'s LR 56.1 Stmt. ¶¶ 8-9; Def.'s Ex. E, Marion Decl. ¶ 5, May 18, 2010.) But, even if she had, the record suggests that Coffelt administered the policy in a discriminatory fashion because there is evidence that Coffelt herself engaged in politicking while on duty. (*See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 37.) Therefore, the Court denies Coffelt's summary judgment motion on this ground.

Whether the speech of a public employee is protected has traditionally been determined by applying the two-part *Connick-Pickering* test. *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007). However, the Supreme Court held in *Garcetti v. Ceballos* that in order to determine whether speech is afforded constitutional protection, a court must make a threshold inquiry as to whether the employee was speaking as a citizen. 547 U.S. 410, 421 (2006). Only when the employee is found to be speaking as a citizen is the content of the speech analyzed under the *Connick-Pickering* test. *Spiegla*, 481 F.3d at 965. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. "Restricting speech that owes its existence to a public

employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* at 421-22.

As a clerk at the customer counter at the Circuit Court of Lake County, Coen's official duties included receiving filing fees, filing pleadings and new cases, handling the mail, answering telephones and occasionally training other clerks. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 11, 13.) It is clear that Coen's statements regarding her political support of Coffelt's political opponent and negative political commentary about Coffelt to customers being served at the counter were not made pursuant to her duties as a clerk because Coen was clearly not expected to engage in political conversations as part of her job. Further, Coen's duties did not require her to promote the formation of a labor union of clerk's office employees at a public meeting. Accordingly, the undisputed record shows that Coen was speaking as a citizen when she made statements regarding her political support of Coffelt's political opponent and negative political commentary about Coffelt (hereinafter collectively "political commentary") to customers and promoted the formation of a labor union of clerk's office employees.

Before proceeding to the *Connick-Pickering* test, another threshold inquiry must be made as to whether Coen falls within the *Elrod/Branti* exception, which provides that "the First Amendment does not prohibit the discharge of a policymaking employee when that individual has engaged in speech on a matter of public concern in a manner that is critical of superiors or their stated policies." *See Iovinelli v. Pritchett*, No. 06 C 6404, 2008 WL 2705446, at *14 (N.D. Ill. July 9, 2008); *see also Branti v. Finkel*, 445 U.S. 507, 517-18 (1980); *Elrod v. Burns*, 427 U.S. 347, 356 (1976).

Coen, a circuit court filing desk clerk, did not hold a policymaking or confidential position such that she fits within the *Elrod/Branti* exception. Unlike positions that have access to

confidential, political information, plaintiff's position was ministerial in nature and involved very little discretion. *See Riley v. Blagojevich*, 425 F.3d 357, 360 (7th Cir. 2005) (holding that employees "who have merely ministerial duties-who really have very little discretion-and employees whose discretion is channeled by professional rather than political norms . . . are not within the [*Elrod/Branti* exception]"). Although plaintiff occasionally performed some tasks that required discretion, such as training or supervising other clerks, the record is devoid of any evidence that these responsibilities provided plaintiff with the opportunity to set or implement policy for the office. *See Wilhelm v. City of Calumet City*, 409 F. Supp. 2d 991, 1000 (N.D. Ill. 2006) (holding that unless a position provided opportunity to set or implement policy for the office, such position was not a "policymaking" position under the *Elrod/Branti* exception). Having disposed of these threshold issues, the Court turns to the issue of whether plaintiff's speech is constitutionally protected.

**A.      Protected Conduct**

Whether speech is protected under the First Amendment is a question of law for the Court to determine. *See Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999); *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). This analysis looks to two separate factors. The first is whether the plaintiff's speech related to a matter of "public concern." *Kokkinis*, 185 F.3d at 843-44 (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)). If the speech relates to a matter of public concern, "the court must then apply the *Connick-Pickering* balancing test to determine whether the interests of the [plaintiff], as a citizen, in commenting upon matters of public concern outweigh the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (internal quotations omitted).

Addressing the first prong of the *Connick-Pickering* test, "political speech . . . fits the definition of 'a matter of public concern.'"  *See Coady v. Steil*, 187 F.3d 727, 731 (7th Cir. 1999); *Zorzi v. County of Putnam*, 30 F.3d 885, 896 (7th Cir. 1994) ("[P]olitical speech is clearly a matter of public concern."); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("A public endorsement of a candidate for public office is an expression of views [protected by the First Amendment].").  Further, the record shows that Coen advocated for the formation of a union of Clerk's office employees in order to raise an issue of public concern, not to further a private interest, and thus, her union formation activities are also a matter of public concern.  *See Gregorich v. Lund*, 54 F.3d 410, 416 (7th Cir. 1995); *Hanover Twp. Fed'n of Teachers, Local 1954 v. Hanover Cmty. Sch. Corp.*, 457 F.2d 456, 460 (7th Cir. 1972).

Even though Coen's political commentary and union advocacy qualifies as a matter of public concern, the Court must still balance her speech interest against her employer's interest in "promoting the efficiency of its public services."  *See Caruso v. DeLuca*, 81 F.3d 666, 670 (7th Cir. 1996).  Among the factors considered in this analysis are the following:

> 1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; 2) whether the employment relationship is one in which personal loyalty and confidence are necessary; 3) whether the speech impeded the employee's ability to perform daily . . . responsibilities; 4) the time, place and manner of the speech; 5) the context in which the underlying dispute arose; 6) whether the matter was one on which debate was vital to informed decision making; and 7) whether the speaker should be regarded as a member of the general public.

*Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1502 (7th Cir. 1994); *see also Rankin v. McPherson*, 483 U.S. 378, 390 (1987).  "*Pickering* balancing is not an exercise in judicial speculation."  *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004) (quotation omitted).  "While it is true that in some cases the undisputed facts on summary judgment permit the

resolution of a claim without a trial, that means only that the *Pickering* elements are assessed in light of a record free from material factual disputes." *Gustafson v. Jones*, 290 F.3d 895, 909 (7th Cir. 2002).

As a preliminary note, the Court need only apply the *Pickering* test to plaintiff's political commentary because ultimately, as explained below, plaintiff has failed to create a genuine issue of material fact that her union formation activities were a motivating factor in her termination. As for plaintiff's political commentary, the record does not contain much evidence relevant to the factors, and what it does contain is insufficient for the Court to form a basis that the *Pickering* test is satisfied as a matter of law.

First, the Court examines whether plaintiff's speech created problems in maintaining harmony among co-workers at her office. Here, it is undisputed that: (1) Lobrillo told defendant that plaintiff talked about defendant in a negative way and was upsetting the office (Def.'s LR 56.1(a)(3) Stmt. ¶ 26); (2) plaintiff was more outspoken than others in the office regarding her support for Cynthia Haran (*id.* ¶ 49); (3) Lobrillo told defendant that plaintiff made negative political commentary about defendant to customers of the Clerk's office at the counter (*id.* ¶ 47); (4) two attorneys told defendant that plaintiff had made comments to them at the Clerk's office regarding plaintiff's support for Cynthia Haran (*id.* ¶ 48); and (5) Kari McHugh, defendant's niece, told defendant that plaintiff said, "Honorable, my ass" to a Federal Express delivery person (*id.* ¶¶ 66-67).

First, although plaintiff admits that she made political statements to her co-workers, she denies that her comments disrupted the office, as Lobrillo claims. Plaintiff's contention is supported by the testimony of two of her co-workers, Richard Worth and Eileen Farrell, who testified that she had a positive attitude and neither heard her make any negative comments about

defendant at work. (Pl.'s LR 56.1(b)(3)(b) Stmt. ¶ 28.) The contention is also supported by defendant's vague recollection of and nonchalant reaction to comments she received about plaintiff from attorneys who use the clerk's office. According to defendant, two attorneys, whose names and genders she could not recall, told her during "chit-chat" at a "[political] function" that plaintiff made political statements to them when they were at the clerk's office, but she "didn't pay too much attention to it." (Def.'s Ex. B, Coffelt Dep. 92-93, 97.) In short, there is a genuine issue of fact as to whether plaintiff's actions adversely impacted the atmosphere in the clerk's office.

Next, the Court examines whether the employment relationship between plaintiff and defendant is one in which personal loyalty and confidence are necessary. See *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (stating that *Pickering* requires an inquiry only as to whether the protected speech "has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary"). It is undisputed that plaintiff's position did not require personal loyalty or the ability to keep confidences. Her duties were overwhelmingly clerical as they consisted mainly of filing pleadings, handling the mail and answering telephones. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 11, 13.) And there is no evidence that suggests that she had access to any of defendant's sensitive or confidential information or that she was one of defendant's confidants.

Third, the record does not suggest that plaintiff's protected speech impeded her ability to perform her daily responsibilities. On the contrary, plaintiff's 2008 review stated she was "meeting expectations," which belies the claim that she was performing poorly. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 2.) Although her performance reviews noted that plaintiff could improve her attitude and verbal skills, these purported deficiencies did not keep her from attaining a "meeting

expectations" rating and it is undisputed that defendant never disciplined plaintiff for these or any other alleged performance problems before her termination.. (*Id.* ¶¶ 16-23.)

In this case, the remaining *Pickering* factors -- the time, place, manner and context of the speech, whether the speech fostered informed decision making and whether plaintiff was speaking as a member of the general public – are much the same. It is undisputed that plaintiff made the political commentary to customers or co-workers at the Clerk's office, during business hours, in the weeks immediately preceding an election for, among other things, County Clerk. Thus, any evidence relevant to the remaining factors has been addressed above.

In sum, the Court finds that there are genuine issues of material fact regarding whether defendant's interest in promoting the efficiency of the Clerk's Office operations outweighs plaintiff's interest in her political speech. Therefore, the Court denies defendant's summary judgment motion as to this issue.

## B.      Substantial or Motivating Factor

To establish that defendant was motivated by plaintiff's political affiliation or union activities, plaintiff must establish that defendant was aware of them and that defendant terminated plaintiff because of them. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992); *see Hall v. Babb*, 389 F.3d 758, 762-63 (7th Cir. 2004). To establish motivation, plaintiff cannot rely on speculation or opinions of non-decision makers, nor can she rely on "self-serving declarations based on nothing more than [her] own speculation." *Kelly v. Mun. Ct. of Marion Cnty.*, 97 F.3d 902, 911 (7th Cir. 1996).

It is undisputed that defendant had been aware of plaintiff's political affiliation and union activities since the spring of 2008. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 37-39, 50-51.) Even so,

defendant argues that she terminated plaintiff because of her negative attitude and untrustworthiness, not because of plaintiff's political activities. Even if other factors played some role in her termination decision, plaintiff argues that the evidence shows that her politicking against Coffelt at the office was the motivating factor for her termination. As discussed above, the parties dispute whether Coffelt's policy against politicking at the office was administered in a neutral manner. (*See supra* p. 8-9.)

Here, a reasonable trier of fact could conclude that plaintiff's termination was politically motivated. First, it is undisputed that plaintiff and the only other employee who politicked against defendant at the office, Kobus, both suffered adverse employment actions after defendant was elected. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 43, 60.) Although the other employees who supported defendant's political opponent did not suffer adverse employment actions, those employees did not politick against defendant at the office. (*Id.* ¶ 40.) As a result, a reasonable trier of fact could infer that defendant reprimanded employees for politicking against her at the office, which creates a genuine issue of material fact as to defendant's true motivations for terminating plaintiff. *See Foster v. Deluca*, No. 04 C 5850, 2006 WL 1980197, at *6 (N.D. Ill. July 7, 2006) (holding that a question of fact remained as to whether plaintiff's termination was politically motivated where he and other employees who did not work on defendant's campaign were fired shortly after defendant took office).

Additionally, the differences between plaintiff's termination and defendant's typical termination procedures also create a triable fact issue as to defendant's true intentions. It is undisputed that defendant terminated plaintiff three days after the election without having given her a warning or an opportunity for probation, as defendant normally does. (*Id.* ¶ 60.) It is also undisputed that plaintiff had received a "meeting expectations" performance review one month

earlier and there is nothing to suggest that her performance changed dramatically in the intervening period. These facts, viewed favorably to plaintiff, support an inference of retaliation. *See Giacoletto v. Amax Zinc Co.*, 954 F.2d 424, 426-27 (7th Cir. 1992) (explaining that departure from internal procedures may support an inference of discrimination and is something the trier of fact should consider).

Further, a reasonable trier of fact could find that defendant's ambiguous statements in plaintiff's termination letter such as "The past few weeks have been difficult ones for many here in the office," and "Your actions and attitude have resulted in my losing faith that I can rely on you to *objectively* perform your duties," (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 36; Pl.'s Ex. 6) (emphasis added), probative of defendant's true intentions for terminating plaintiff. *See Phelan v. Cook Cnty.*, 463 F.3d 773, 782 (7th Cir. 2006) (holding that to the extent the retaliatory nature of certain statements is ambiguous is an issue for the jury to decide). Therefore, the Court finds that when viewed in the light most favorable to plaintiff, a reasonable trier of fact could infer that plaintiff's political statements were a motivating factor in her termination.

Plaintiff has failed, however, to create a genuine issue of material fact as to whether her union formation activities were a motivating factor in her termination. Plaintiff argues that it was a motivating factor merely because she was terminated a month after she spoke in favor of a uion at a public meeting. However, plaintiff has failed to establish that defendant knew that plaintiff spoke at the meeting or knew what was said at the meeting. *See Garrett*, 961 F.2d at 632. Although it is undisputed that defendant knew plaintiff supported the formation of a union in general, this alone, is insufficient to establish that it was a motivating in plaintiff's termination. Because plaintiff has failed to provide any other evidence on this point, the Court grants defendant's motion for summary judgment on this claim alone.

**C.     Defendant's Legitimate, Non-Political Reason for Termination**

Because plaintiff has established a *prima facie* case of political retaliation based on her political statements, the Court must determine whether defendant has demonstrated a legitimate, nonpolitical reason for Coen's termination. *See Hall*, 389 F.3d at 762. Defendant testified that she terminated plaintiff because she no longer trusted her and because of her negative attitude. (Def.'s Ex. B, Coffelt Dep. 173:9-19.) Since 2006, plaintiff's employment reviews have indicated that plaintiff has had a negative attitude. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 14-22.) Additionally, defendant testified that the FedEx incident, as well as plaintiff's overall demeanor including not looking defendant in the eye or speaking to her, caused defendant not to trust plaintiff. (*Id.* ¶¶ 26-27.) Therefore, defendant has met her burden of production by presenting a legitimate, nonpolitical reason for terminating plaintiff.

**D.     Pretext**

Under § 1983, if the defendant presents a nondiscriminatory reason for the employee's termination, the burden then shifts back to the plaintiff to establish by a preponderance of the evidence that the defendant's proffered reasons are pretextual. *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir. 1996). At all times, however, the burden of persuasion remains with the plaintiff. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998). To show that an employer's stated ground for an adverse employment action is pretextual, a plaintiff generally must present either direct evidence that an illegitimate ground was a motivating factor in the employer's decision or create a genuine issue of material fact as to the sincerity of the proffered reason. *See Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995). As to the latter, it must be shown either that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the decision; or (3) the reason was insufficient to motivate the adverse

action.  *O'Connor v. DePaul Univ.*, 123 F.3d 665, 670 (7th Cir. 1997).  If the employee succeeds in casting doubt on the proffered reason, the ultimate question of whether the employer discriminated against the employee should be left for a jury to consider.  *Id.*

There is evidence in the record that casts doubt on the sincerity of defendant's proffered reasons for plaintiff's termination.  Although defendant relies on the FedEx incident as the main justification for no longer trusting plaintiff, it is undisputed that defendant did not investigate the incident, discuss with plaintiff her suspicion that plaintiff stole or hid the package or document her suspicion in any way.  (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 30.)  Coffelt's belief that plaintiff took the package was only based on the fact that plaintiff found it and Coffelt's belief that plaintiff did not like the employee who was trying to send the package.  (*Id.* ¶¶ 30, 36.)

The other basis for plaintiff's termination, her negative attitude, is similarly suspect. Defendant admits that the deterioration of plaintiff's negative attitude was not well-documented. (Def.'s Resp. Pl.'s 56.1(b)(3)(C) Stmt. ¶ 34.)  Further, a month before plaintiff was terminated, her employment review indicated that she was "me[eting] expectations," (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2) and there is nothing in the record to suggest that something changed in plaintiff's behavior in the month that passed between her last performance review and the date of her termination to indicate that she was no longer meeting expectations, and lastly, plaintiff was never given any kind of warning or probation before her termination that is the typical procedure in the office.  (*Id.* ¶ 35.)  These facts support a reasonable inference that defendant's proffered reasons for her termination were pretextual.  *See Courtney v. Biosound, Inc.*, 42 F.3d 414, 423-24 (7th Cir. 1994) (stating that where the evidence raises a question of fact as to the validity of the proffered reasons, the "ultimate question of discrimination" is best resolved by the trier of fact). As a result, the Court finds that plaintiff has created a genuine issue of material fact as to

whether she was terminated because of her political affiliation, and defendant's motion for summary judgment is denied.

## III.    Qualified Immunity

Last, defendant argues that she is entitled to qualified immunity.   An official's right to immunity turns on two questions: first, whether the facts presented, when viewed in a light most favorable to the plaintiff, describe a violation of a constitutional right, and second, whether the constitutional right at issue was clearly established at the time the alleged violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818-22 (2009).  Here, plaintiff satisfied the first prong because the Court has found that a reasonable trier of fact could find a constitutional violation based on plaintiff's First Amendment claim.  Additionally, at the time the violation occurred the law was clear that employees are protected by the First Amendment when they support a political candidate of their choice, and may not be retaliated against based on their political affiliations or activities.  *Branti*, 445 U.S. at 517-18; *Hall*, 389 F.3d at 762.  Thus, the allegations of Coen's claim satisfy both prongs of the qualified immunity analysis and therefore, the Court denies defendant's motion for summary judgment on the issue of whether Coffelt is entitled to qualified immunity.

**<u>Conclusion</u>**

For the reasons set forth above, the Court grants in part defendant's motion for summary judgment as to plaintiff's retaliation claim based on her union formation activities, and denies in part defendant's motion for summary judgment as to her retaliation claim based on political speech [doc. no. 34]. The parties shall be prepared to set a date for trial at the next status hearing.

**SO ORDERED**                                        **ENTER:  March 31, 2011**


**RONALD A. GUZMAN**
**U.S. District Judge**